Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, or rehear the parties or their representatives, the Full Commission MODIFIES and AFFIRMS the Opinion and Award of the Deputy Commissioner as follows:
The following were entered into by the parties at the hearing before the Deputy Commissioner as
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between plaintiff and defendant-employer.
3. The AETNA Life and Casualty was the compensation carrier on the Risk.
4. Plaintiff's average weekly wage was $323.12, which yields a compensation rate of $215.42 per week.
5. Plaintiff suffered an injury by accident on January 23, 1991, resulting in an injury to his back.
6. The Defendant employer admitted liability and the parties entered into a Form 21 and a Form 26 agreement, both of which were approved by the Industrial Commission.
7. The issues to be determined by the Commission are:
 (1) Whether Plaintiff is entitled to continuing medical treatment,
 (2) What additional temporary total disability benefits after October 3, 1991, is plaintiff entitled to receive, and
 (3) Whether plaintiff was justified in refusing light duty [employment].
* * * * * * * * * * * * * * * * * *
Based upon all the competent and credible evidence of record, the Full Commission makes the following additional
FINDINGS OF FACT
1. Plaintiff is a 47 year-old male who was employed as a truck driver for the defendant employer. On January 23, 1991, the plaintiff was in an accident involving his truck and another vehicle. As the result of the accident, the plaintiff lost his commercial driver's license.
2. On January 23, 1991, the plaintiff sustained a compensable acute lumbar strain. He was released to return to work at light duty on March 17, 1991. Thereafter, he successfully operated a tractor trailer truck in the brief time before his commercial license was taken. In his light duty job — which was a real, pre-existing job, not created for his benefit — he drove a pick-up truck to Charlotte and other locations on errands, and performed record-keeping tasks which could be done sitting or standing, and did not involve any lifting. After working for a short period of time, the plaintiff quit his job at Howard Lisk Trucking because the employer reduced his pay check to repay loans made prior to the accident. Plaintiff was capable of performing this job, and left this employment for reasons unrelated to the compensable accident. This job was suitable to plaintiff's capacity, and his refusal to continue in it was not justified, within the meaning of N.C. Gen. Stat. § 97-32. By March 17, 1991, plaintiff was capable of getting and successfully performing employment in the competitive job market.
3. On October 3, 1991, Dr. Griffin released the plaintiff to return to his previous occupation. The plaintiff was unable to return to work as a truck driver due only to having lost his commercial driver's license. Since quitting his job at Howard Lisk Trucking, the plaintiff admits that he has worked for several employers, including Wal-mart (which he testified was too strenuous for his condition) and various friends.
4. When he released the plaintiff to return to his previous occupation on October 3, 1991, Dr. Griffin stated that the plaintiff was probably not going to have any permanent disability from his injury. When the plaintiff returned to see Dr. Griffin on September 30, 1992, Dr. Griffin noted that the plaintiff's subjective complaints were not substantiated by objective findings. It was the doctor's opinion that the plaintiff had resolved his injury without any permanent disability.
5. It remains Dr. Griffin's opinion that the plaintiff is capable of performing the duties of a truck driver. Dr. Griffin's opinion is based on his physical examination of the plaintiff and on the results of a functional capacity evaluation obtained on August 26, 1991. The functional capacity evaluation indicated that the plaintiff was capable of returning to his previous employment. Plaintiff has failed to prove any diminution in his capacity to earn wages.
6. The plaintiff returned to see Dr. Griffin on January 26, 1994. At that time, it was Dr. Griffin's opinion that the plaintiff had no permanent impairment as the result of his work injury and was not disabled in any way.
7. The plaintiff has also been seen by Dr. James E Rice. The plaintiff first saw Dr. Rice on December 29, 1993. Dr. Rice was not provided with a copy of Dr. Griffin's records or with a copy of the functional capacity evaluation.
8. At his deposition, Dr. Rice testified that his examination of the plaintiff's back and leg on both his initial evaluation in December of 1993, and his follow-up visit on June 22, 1994, did not demonstrate any motor or sensory changes or any significant irritation to indicate any significant nerve root compromise which may be implicated in causing the symptoms described by the plaintiff. In other words, there were no objective findings to substantiate or explain the plaintiff's claimed symptoms.
9. The plaintiff testified that he was unable to drive a truck due to ongoing symptoms, including neck, back, and shoulder pain, severe headaches, dizziness, and blurred vision. The plaintiff did not tell Dr. Rice that he was having blurred vision, dizziness, right shoulder pain, or numbness in his legs. Dr. Rice did not document any atrophy of the plaintiff's leg, foot, or arm. Dr. Rice also did not document any muscle spasms.
10. Dr. Rice did not place any limitations on the plaintiff as the result of his leg or back pain. Dr. Rice noted that the plaintiff may have flare-ups of back pain but that he was at no risk or minimal risk for requiring any surgical intervention on his back. As previously stated, Dr. Rice was not aware that a functional capacity evaluation had been performed. Dr. Rice testified that if an FCE (functional capacity evaluation) had revealed that the plaintiff was capable of performing his previous employment as a truck driver, he would not have any reason to dispute the FCE.
11. No doctor has stated that the plaintiff is incapable of performing his regular job as the result of injuries sustained on January 23, 1991. No doctor has assigned any permanent partial disability.
12. Subsequent to the January 23, 1991, truck accident, the plaintiff was diagnosed as having a lumbar strain. There is no indication that the plaintiff ever complained of pain in his neck. The medical records indicate that the plaintiff first began complaining of neck pain over three years after the truck accident. The plaintiff was subsequently diagnosed as having a herniated disc at C6-7. The plaintiff's witness, Dr. Rice, could not testify that the herniated cervical disc was causally related to the January 23, 1991, accident. In Dr. Rice's opinion, it would be difficult to state one exact factor that could cause a disc to herniate. He stated that, "Outside of the repetitive trauma, isolated injury, normal aging process, genetic predisposition, there are multiple causes that can cause that. It's difficult to state one exact fact."
13. Although the plaintiff had been seen by Dr. Rice on several occasions, he did not make any complaint of arm or neck pain until September of 1994. Dr. Rice considered the neck problem to be a new condition or complaint. Dr. Rice acknowledged that the cervical disc herniation could have occurred spontaneously regardless of whether the plaintiff had any type of trauma.
14. With regard to the causation issue, Dr. Griffin agreed with Dr. Rice. "I don't find the thread of continuity from injury to complaint to diagnosis that I would expect to find if the accident were the causative agent for his ruptured disc." Dr. Griffin pointed out that the plaintiff was seen on multiple occasions and was put through a work-hardening program which involved a significant amount of activity. Notwithstanding those facts, no one, including Dr. Griffin, elaborated on any complaints to the head or neck until the 1994 visit. Plaintiff's herniation of his cervical disc could have occurred spontaneously without any type of trauma and that it could be related to normal activity. In Dr. Griffin's opinion, it was "unlikely" that the herniated cervical disc was causally related to the accident on January 23, 1991.
Based on the foregoing findings of fact, the Full Commission makes the following additional
CONCLUSIONS OF LAW
1. Plaintiff was capable of gainful employment in the competitive job market after March 17, 1991, and refused such employment suitable to his capacity. N.C. Gen. Stat. § 97-32; McCoy v. OxfordJanitorial Service, 122 N.C. App. 730, 471 S.E.2d 662 (1996).
2. The plaintiff has failed to carry his burden of proving a causal relationship between his work-related accident and the herniated cervical disc of which he complained in September, 1994. In the absence of persuasive expert medical testimony tending to establish a causal relationship between plaintiff's work-related accident and the herniated disc, compensation for that condition must be denied. Click v. Pilot Freight Carriers, Inc., 300 N.C. 164,265 S.E.2d 389 (1980).
* * * * * * * * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Plaintiff's claim for further benefits is hereby DENIED.
2. Each side shall pay its own costs.
 S/ _____________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ __________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ __________________ LAURA K. MAVRETIC COMMISSIONER
JRW:md 4/18/97